IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FELICIA D. GRANT,<br><br>         Plaintiff,<br><br>v.<br><br>MCCURDY & CANDLER, LLC, LUCILA GUZMAN, ANTHONY DEMARIO, CHASE HOME FINANCE, and TONEY IBARRA,<br><br>         Defendants. | CIVIL ACTION NO.<br>1:12-cv-4232-JEC |

### ORDER & OPINION

This case is before the Court on defendants' Motions to Dismiss [3] and [4]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' Motions to Dismiss [3] and [4] should be **GRANTED**.

### BACKGROUND

This case arises out of an allegedly wrongful foreclosure. (Compl. [1] at 3.) Plaintiff Felicia D. Grant ("plaintiff") entered into a loan transaction with defendant JPMorgan Chase Bank, N.A. ("JPMorgan") on June 8, 2007, secured by real property (the "Property") located at 1961 Evergreen Drive SW, Austell, Georgia 30106. (*See* Def.'s Mot. to Dismiss [4] at Ex. A.) At some point, plaintiff defaulted on the note (the "Note"), and JPMorgan commenced

non-judicial foreclosure proceedings, as provided for in the security deed (the "Security Deed"). (*Id.* at ¶ 22.) After receiving notice from JPMorgan's attorneys, defendant McCurdy & Candler, LLC ("McCurdy & Candler"), plaintiff apparently attempted to settle the Note by personal check sent to JPMorgan by certified mail on July 27, 2012. (*See* Compl. [1] at Exs. B and C.) The check, however, was rejected because of insufficient funds. (Pl.'s Aff. [1] at ¶ 7.) It might also have been rendered non-negotiable due to plaintiff's additional writing on the check, particularly the words "NOT FOR DEPOSIT EFT ONLY FOR DISCHARGE OF DEBT." (*See id.* at Ex. B; Def.'s Mot. to Dismiss [3] at 5.)

Plaintiff then, on September 4, 2012, filed for Chapter 13 bankruptcy in the United States Bankruptcy Court, Northern District of Georgia. (*See* Compl. [1] at Ex. G; *In re Felicia Daphne Grant*, No. 12-bk-72214-jrs, Dkt. No. 1 (Bankr. N.D. Ga. Sep. 4, 2012).) The bankruptcy petition was subsequently dismissed on October 30, 2012 for failure to pay the filing fee. (*Id.* at Dkt. No. 17.)

On December 7, 2012, plaintiff instituted the present action in this Court against JPMorgan, McCurdy & Candler, and defendants Tony Ibarra (an employee of JPMorgan), Lucila Guzman (an employee of McCurdy & Candler), and Anthony Demario (also an employee of McCurdy & Candler). (*See* Compl. [1].) Defendants moved to dismiss the action under Federal Rule 12(b)(6). (*See* Defs.' Mot.'s to Dismiss

2

Case 1:12-cv-04232-JEC Document 5 Filed 09/30/13 Page 3 of 11

[3] and [4].)

## DISCUSSION

### I. MOTION TO DISMISS STANDARD

In deciding a motion to dismiss under Federal Rule 12(b)(6), the Court assumes that all of the allegations in the complaint are true and construes all of the facts in favor of the plaintiff. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). That said, in order to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "facial[ly] plausib[le]" when it is supported with facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts will "eliminate any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### II. PLAINTIFF'S COMPLAINT

Plaintiff's complaint is enigmatic, making it difficult for the Court to determine the facts alleged and legal theories upon which

3

AO 72A
(Rev.8/82)

recovery is premised.  Plaintiff is a *pro se* litigant, however, and "'[*p*]*ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'"  *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003)(quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)).  But there are limits: "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action."  *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)(citations omitted), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 706 (11th Cir. 2010).  Thus, the Court reads plaintiff's complaint charitably, within the limits imposed by the Eleventh Circuit.

On its face, plaintiff's complaint attempts to formulate an action under 42 U.S.C. § 1983, alleging unspecific violations of various constitutional rights, including most of the Bill of Rights.[1] That statute provides a right of action for a plaintiff who has been deprived of federal statutory or constitutional rights by a defendant acting "under color of" state law.  42 U.S.C. § 1983.  It is well established, however, that "most rights secured by the Constitution

---

[1] The complaint also states that "Defendants' actions are tantamount to nothing less than CRIMINAL TREASON against the united [sic] States Constitution and the People of the United States." (Compl. [1] at 3.)  This Court assumes this is gratuitous commentary.

4

are protected only against infringement by governments." *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978). For this reason, § 1983 is generally used in suits against state officials or municipal governments and officials, and "[o]nly in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes."[2] *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).

"The Eleventh Circuit recognizes three tests for establishing state action by what is otherwise a private person or entity: the public function test, the state compulsion test, and the nexus/joint action test." *Id.* (citing *NBC v. Commc'n Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988). Because no state law compels any party to foreclose on a security deed when the loan is in default, the state compulsion test is inapplicable here. *See Id.*, 949 F.2d at 1130-31. "The nexus/joint action test involves situations where the government has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Id.* at 1131 (quoting *NBC*, 860 F.2d at 1026). As this test has not been met by such extensively

---

[2] The complaint seems to have been copied wholesale, with only the slightest of modifications, from a boilerplate civil rights complaint against a municipality. Plaintiff twice neglected to change the formulaic references to "Defendant City." (*See* Compl. [1] at ¶¶ 11-12.)

regulated private actors as nursing homes and hospitals, it is inapplicable in the case of a private holder of a security deed, who pursues non-judicial foreclosure solely under the terms of a private agreement with the borrower. *See Id.* All the government has done is pass a statute permitting such foreclosures. This leaves the public function test, which finds state action "only when private actors are given powers (or perform functions) that are 'traditionally the *exclusive* prerogative of the State.'" *Harvey*, 949 F.2d at 1131 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974)). Although some states require judicial process for mortgage foreclosures, this hardly makes foreclosure the exclusive prerogative of the state, and Georgia has permitted non-judicial foreclosure since the nineteenth century.[3] Thus, it is not the case that foreclosures are a public function of the state.

This Circuit's predecessor made it clear that non-judicial foreclosure sales do not implicate the Constitution, and provided an explanation that warrants extended quotation:

> A sale under a deed of trust, to be an effective creditor remedy, must of course pass good title. The contract that provides for a power of sale thus relies, ultimately, on the state's acknowledgment of the legal effect of the involuntary change in ownership brought about by the exercise of the power of sale. That the state merely recognizes the legal effect of such private arrangements

---

[3] The current statute, O.C.G.A. § 44-14-60, can be traced to 1871.

6

> does not convert them into state acts for Fourteenth Amendment purposes. This principle is implicit in our UCC cases. It is explicit in the decisions of other circuits holding that a secured party, to enable it to sell an automobile repossessed through self-help, and permitting the sale to convey good title, does not significantly implicate the state in the termination of the debtor's property interest. Virtually all formal private arrangements assume, at some point, the supportive role of the state. To hold that the state, by recognizing the legal effect of those arrangements, converts them into state acts for constitutional purposes would effectively erase to a significant extent the constitutional line between private and state action and subject to judicial scrutiny under the Fourteenth Amendment virtually all private arrangements that purport to have binding legal effect.

*Barrera v. Sec. Bldg. & Inv. Corp.*, 519 F.2d 1166, 1170 (5th Cir. 1975)(citations omitted).[4] Under this or a similar rationale, the former Fifth Circuit held that "there is no sufficient nexus to transform the private mortgagee's act [of non-judicial foreclosure] into that of the federal government." *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 358 (5th Cir. 1977). Likewise the Georgia Supreme Court held that a non-judicial foreclosure is "a purely contractual matter between two parties in the exercise of private property rights. There is insufficient meaningful government involvement to constitute state action . . . ." *Coffey Enters. Realty & Dev. Co., Inc. v. Holmes*, 233 Ga. 937, 938 (1975); *Nat'l Cmty. Bldrs., Inc. v.*

---

[4] Decisions of the former Fifth Circuit rendered prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

7

*Citizens & S. Nat'l Bank*, 232 Ga. 594, 596 (1974)("Georgia's realty foreclosure statutes...are constitutional, and a foreclosure pursuant to them does not violate procedural due process rights."). Thus, controlling and persuasive authorities have found no constitutional rights implicated in non-judicial foreclosure sales.

From the above it is clear that plaintiff's civil rights complaint must fail. The Court sets it aside and instead focuses on what other causes of action she might have under a reasonable construal of her pleadings.[5]

B.  <u>Chapter 13 Bankruptcy Filing</u>

On September 4, 2012, plaintiff filed for bankruptcy under Chapter 13 in the United States Bankruptcy Court, Northern District of Georgia. (*See* Compl. [1] at Ex. G.) Filing for Chapter 13 bankruptcy normally imposes an immediate stay upon debt collection and related actions by the filer's creditors, the violation of which can support a civil action for damages. *See* 11 U.S.C. § 362(k)(1) ("[A]n individual injured by any willful violation of [the automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.") A violation is "willful" when the creditor knows of the

---

[5] Because plaintiff's grievances against defendants Guzman, Demario, and Ibarra seem to be premised solely upon those parties being "government officials" subject to § 1983, the remaining discussion excludes them.

8

automatic stay and intended to violate it. *See, e.g.*, *In re Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996).

It is not clear from the bankruptcy court docket that any stay was actually issued, perhaps due to the fact that plaintiff failed to file all the necessary documentation with her petition. *See In re Felicia Daphne Grant*, 12-bk-72214-jrs at Dkt. No. 15. In any case, plaintiff's failure to pay the filing fee eventually led to the dismissal of her case on October 30, 2012. There are no facts alleged in the pleadings, nor evidence in the record, to suggest that any of the defendants in any way violated the stay (if in fact there was one) during the period from September 4 to October 30. As the bankruptcy court has since dismissed plaintiff's case, it does not seem to be of any further relevance in the present action.

    C.    <u>Plaintiff's Other Claims</u>

Generally, at this point, the Court would consider what other causes of action might charitably be derived from a *pro se* plaintiff's factual allegations. However, those claims are all likely to be state law claims. As plaintiff's federal claims have been removed from the case, § 1367(c)(3) applies. That section states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court

9

has observed that:

> a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendant state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)(footnote omitted). *See also Hardy v. Birmingham Bd. of Educ*., 954 F.2d 1546, 1550 (11th Cir. 1992).

The Court concludes that it is inappropriate to address plaintiff's potential state law claims in this case because plaintiff's federal claims have been dismissed. Because there is not complete diversity of citizenship[6] between the parties, those federal claims are the only basis for this Court's jurisdiction over the case. Moreover, a "[n]eedless decision[] of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer[-]footed reading of applicable law. . . [Certainly,] if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of*

---

[6] Plaintiff shares Georgia citizenship at least with McCurdy & Candler, and perhaps other defendants as well.

10

*Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Accordingly, the Court declines to exercise supplemental jurisdiction in order to address plaintiff's potential state law claims.

## CONCLUSION

Because plaintiff's pleadings are inadequate to support any federal cause of action against any of the defendants, even after very liberal construal of the allegations, this Court hereby **GRANTS** defendants' Motions to Dismiss [3] and [4]. Plaintiff's federal claims are **DISMISSED WITH PREJUDICE;** her state law claims area **DISMISSED WITHOUT PREJUDICE.**

SO ORDERED, this 28th day of September, 2013.

/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)